UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT HENLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:15CV00892 |
| ) | |
| JAY CASSADY, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Scott Henley's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [4].

**I.  BACKGROUND**

Petitioner Scott Henley ("Petitioner") was convicted by a jury of forcible rape in violation of Missouri Revised Statute § 566.030 and robbery in the second degree in violation of Missouri Revised Statute § 569.030. He was sentenced to thirty-five-years imprisonment for forcible rape and a consecutive ten-year sentence for robbery. His conviction was affirmed by the Missouri Court of Appeals, Eastern District of Missouri. Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. After a hearing, his motion was denied. The judgment was affirmed on appeal.

The Missouri Court of Appeals for the Eastern District of Missouri described the facts of Petitioner's conviction as follows:

> Victim, a sixty-nine year old widow, lived alone next door to her son. On July 17, 2005, she returned from a community event to her home at around 9:00 p.m. She fell asleep watching television in her living room. At around midnight she awoke, and went upstairs to bed. Defendant saw her turn off the porch light and approached the house and knocked on the door. Victim, hearing the knock, went downstairs to the door, wearing a robe over a t-shirt and undergarments. She

opened the door without checking, assuming it would be her son or the tenant of her rental property, who often brought her rent over late in the evening.

Upon opening the door she was confronted by Defendant, a stranger, who claimed he had just been robbed and needed to use the phone. Her suspicions aroused, she attempted to shut the door, but Defendant forced his way in. He told her to get on the couch or he would shoot or kill her. She contemplated fighting him, but doubted she could succeed, due to an ageing knee replacement, and was worried that to do so would make him angry. He got on top of her, on the couch, and ripped the clothes off her, which included a "maxipad" as she suffered from incontinence, leaving the robe underneath her. She tried to talk to him, to stop him from raping her. Victim was particularly concerned as she suffered from a delicate medical condition and was not sure what would happen if he attempted to penetrate her. Her attempts were to no avail and he had sexual intercourse with her. He then went over to her purse on the kitchen table and removed some currency, around $40. He left the house, wiping the doorknob as he left, stating "do you think I'm a fool or something?" When she was able to gather herself, Victim called 911.

At the hospital, Victim was examined by Jennifer Staggs ("Nurse"), who was experienced in examining rape victims. She found marks on her arms that were consistent with the bra being pulled off, as well as bruises on her inner thighs consistent with her legs being forced apart. There were no signs of trauma in the genital area, but a DNA sample was obtained from the semen that was present on the vaginal swab. The DNA was consistent with Defendant's genetic profile and led detectives to question Defendant.

ECF No. 32-5, pgs. 4-5.[1] Petitioner was convicted by a jury and sentenced to consecutive terms of thirty-five-years imprisonment and ten-years imprisonment. Petitioner now challenges his convictions.

II. **STANDARD**

"A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal

---

[1] These facts are taken directly from the Court of Appeals Memorandum affirming Petitioner's conviction on direct appeal. A determination of a factual issue made by a State court shall be presumed to be correct. 28 U.S.C. § 2254(e).

court to grant an application for a writ of habeas corpus brought by a person in custody or by order of a state court, the petitioner must show the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Garth*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id*.

### III. DISCUSSION

Petitioner asserts six claims in his petition for writ of habeas corpus. First, he claims there was insufficient evidence to convict him of robbery in the second degree. He asserts the state did not offer evidence to support he used force to accomplish the robbery, which is one of the necessary elements of robbery in the second degree. Second, he contends the trial court erred in failing to declare a mistrial when a state witness offered inadmissible opinion evidence. Third, he

3

argues the trial court abused its discretion by overruling his objection and allowing the state to argue in its rebuttal members of the jury should consult with the lawyers on the jury to evaluate Petitioner's argument in the trial's penalty phase. Fourth, he states his counsel was ineffective, because his lawyer failed to investigate the defense of not guilty by mental disease or defect and failed to present such evidence during the guilt phase of trial. Fifth, he claims ineffective assistance of counsel, because his lawyer failed to adduce mitigation evidence and advise him of his right to present mitigation evidence during the penalty phase of trial, such as his mental illness, low IQ and lack of prior convictions. Finally, he contends his counsel was ineffective, because his lawyer waived closing argument during the guilt phase of trial without consulting him. The Court will address each claim as follows.

  *A. Claim One – Insufficient Evidence Supporting Robbery Conviction*

In his first claim, Petitioner argues there was insufficient evidence to support his conviction of robbery in the second degree. Specifically, Petitioner states the State provided no evidence he used force to accomplish the robbery, despite force being a required element of the crime. Instead, Petitioner asserts the evidence showed he only took $40-60 from the victim's house, force was only used in committing the rape, not the robbery, and by the time of the robbery, the violence was over and he used no further threats.

Petitioner raised this argument in his direct appeal. The Missouri Court of Appeals held this claim of error was without merit. It stated "the evidence showed Defendant forced his way into the house, committed an act of forcible rape upon Victim, took currency from the Victim's purse and then left the house." The question the Missouri Court of Appeals then turned to was "whether the force used to commit the act of rape carries over to the taking of the currency from the Victim's purse." It determined "the evidence showed Defendant used force in perpetrating

the rape" and, based on both the evidence and legal precedent in Missouri, "Defendant's use of force in raping Victim was sufficient evidence to support his conviction of robbery in the second degree by preventing and overcoming Victim's resistance." The evidence supporting the finding of force in perpetrating the rape included "the torn bra and the bruises on Victim's arms and legs."

Under a § 2254 claim that asserts insufficient evidence to convict, it is necessary to consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the evidence adduced at trial no rational trier of fact could have found proof beyond a reasonable doubt." *Id.* at 323. There is also a presumption "the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence." *Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004). Petitioner has not rebutted this presumption.

The evidence relied upon by the Missouri Court of Appeals satisfies the *Jackson v. Virginia* standard – any reasonable juror could find by the torn bra and bruises Petitioner used force to perpetrate the rape and this force overcame the resistance of the victim during the commission of the robbery, one of the necessary elements of second degree robbery. This claim will be denied.

> B. *Claim Two – Failure to Declare a Mistrial*

In his second claim, Petitioner asserts the trial court erred when it failed to grant a mistrial after one of the state's witnesses offered inadmissible opinion evidence. Specifically, the prosecutor asked the state witness, "Is there always trauma in the genital area in a person that

5

presents themselves as a sexual assault victim?" to which the witness replied, "No, there is not always trauma. Usually, there is no trauma." The trial court instructed the jury to disregard the statement "Usually, there is no trauma" instead of granting a mistrial. Petitioner asserts the trial court erred in failing to grant a mistrial, because he was offering a consent defense and was prejudiced by this statement.

Petitioner raised this argument on direct appeal. In Petitioner's direct appeal, the Missouri Court of Appeals determined:

> The trial court cured any potential prejudice by instructing the jury to disregard that statement. In addition, the excluded statement "[u]sually there is no trauma" added little to the admitted part of the statement "[n]o, there is not always trauma" because that statement sufficiently answered the prosecutor's question and explained the absence of genital trauma. Moreover, Defendant's guilt was established overwhelmingly by the evidence including the torn clothing, the DNA samples, and the bruising on the arms and legs. As a consequence, Defendant did not suffer any prejudice from the trial court's refusal to grant a mistrial.

ECF No. 32-5, pg. 9. It then denied this point of appeal and held it was without merit. This determination is not contrary to clearly established Federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Additionally, in his federal habeas corpus claim before this court, Petitioner fails to identify any federal constitutional or statutory violation that occurred because of the failure to grant a mistrial, which is required to have a cognizable federal claim. 28 U.S.C. § 2254(a). This claim will be denied.

*C. Claim Three – Abuse of Discretion in Allowing Prosecution's Argument*

In his third claim, Petitioner states the trial court abused its discretion in overruling his objection during the State's rebuttal argument in the penalty phase. He claims it was an improper argument. Specifically, Petitioner declares the prosecutor told the jurors the defense's theory was

6

a "red herring" and the jurors should consult with the lawyers on the jury to explain that to them. Specifically, the prosecution stated:

> He thought that he could duke you jurors, triers of fact, by sitting here and lying about all the sex he is having with [Victim]. You didn't fall for feeling confident, because you were right. You made the right decision. Don't let the defense attorney make you feel maybe it is wrong. That maxipad, that's what we call a red herring. I'm sure [jury foreman and attorney] Stuart Oelbaum can talk about that, and everyone, and also the other attorney.

ECF No. 32-1, pg. 129. Petitioner asserts this was improper because legal instruction should only come from the court.

Petitioner raised this argument in his direct appeal. The Missouri Court of Appeals noted during the penalty phase, the defense attorney stated in his argument:

> You are the only jury I have run into who has two lawyers sitting next to them in the jury box. I do find that uncomfortable, yes. We don't like to be judged by ourselves, judge by peers in any way. The law changes. Lawyers can sit on juries too.

ECF No. 32-1, pg. 128. The Missouri Court of Appeals then discussed defense counsel's statements further:

> During the closing argument in the sentencing phase of Defendant's trial, Defendant's counsel argued the evidence and the weakness of the State's case as well as issues of punishment. Defendant's counsel argued that the seminal fluid found on the maxipad was not tested, and that it could not have been seminal fluid because the maxipad was removed before the rape.

ECF No. 32-5, pg. 10. The appellate court found that while both the prosecution and the defense "made specific references to the two members of the jury who were practicing attorneys," the prosecution's comments about the maxipad, which "went to the issue of guilt rather than to aggravating factors for sentencing," were in response to the defense's closing argument, which discussed the weakness of the case. This meant the prosecutor's statements were invited by the defense attorney "when [the defense attorney] sought to undermine the verdict of the jury by questioning the sufficiency of the evidence to

7

convict Defendant." The appellate court held the issues surrounding the weakness of the State's case and the evidence, such as the maxipad, were only relevant for consideration in the guilt phase of the trial.

The Missouri Court of Appeals stated the prosecutor's statement "did not ask the jury to seek legal advice from the two attorneys, but was merely a response to Defendant's arguments regarding the evidence of guilt." Finally, the appellate court held Petitioner could not show how the contested statement affected his sentence when the statement itself "went to the issue of guilt which had already been determined." Additionally, it found there were "no reasonable grounds for finding that the prosecutor's disputed remarks influenced the jurors' sentencing deliberations" and denied this claim.

Here, admission of the prosecution's statement during its sentencing rebuttal argument is an evidentiary ruling of the state court and is not cognizable on federal habeas review. The United States Supreme Court has held "federal habeas corpus relief does not lie for errors of state law" and "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Because the admission or exclusion of evidence or arguments is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. *Scott v. Jones*, 915 F.2d 1188, 1190-91 (8th Cir. 1990); *Johnson v. Steele*, No. 4:11CV01022 SNLJ, 2014 WL 4627174, at *7 (E.D. Mo. Sept. 12, 2014). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." *Evans v. Luebbers*, 371 F.3d 438, 443 (8th Cir. 2004) (citing *Estelle*, 502 U.S. at 68).

"A state court's evidentiary ruling is a matter of state law, and we may examine the ruling in a habeas petition only to determine whether the asserted error denied due process." *Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995). "A state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005) (quoting *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996)). To constitute a due process violation, an evidentiary mistake must be "so egregious that [it] fatally infected the proceedings and rendered [Petitioner's] entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

The state court's evidentiary rulings in Petitioner's case were not "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." The state appellate court ruled the prosecution's statements were invited by the defense attorney's statements and the statements were not prejudicial enough to constitute an abuse of discretion by the trial court. The trial court's decision to overrule Petitioner's objection and allow the statement, as well as the appellate court's determination, were not so egregious to deprive Petitioner of due process. This claim will be denied.

### D. Claim Four – Ineffective Assistance of Counsel: Failure to Investigate

In his fourth claim, Petitioner maintains his trial counsel was ineffective, because counsel failed to investigate Petitioner's mental health problems and low IQ, and did not prepare and present a mental disease or defect defense at the guilt phase of the trial.

In his post-conviction motion and appeal, Petitioner raised this argument. The motion court found Petitioner's trial counsel attempted to use the defense of consent to the charge of forcible rape instead of a mental disease or defect defense, consistent with Petitioner's claim he

9

had an ongoing consensual sexual relationship with Victim. Additionally, the motion court held Petitioner failed to establish any prejudice by a preponderance of the evidence, because the actions he took, such as wiping his fingerprints from the doorknob to avoid detection and lying to gain access to the victim's house, showed Petitioner knew and appreciated the nature, quality, or wrongfulness of his conduct. Because of the conclusions that could be drawn from Petitioner's actions, the motion court determined Petitioner's claim his trial counsel was ineffective because counsel failed to pursue a defense of not guilty by reason of mental disease or defect or diminished capacity was not credible.

The motion court also found the records and tests Petitioner's expert, Dr. Peterson, relied upon in forming his opinion about Petitioner's mental state at the time he committed the crimes did not conform to Missouri statutory requirements. The court determined Dr. Peterson relied on records and tests that did not show Petitioner lacked or was incapable of knowing or appreciating the nature, quality or wrongfulness of his conduct and were based on Petitioner's self-report. Additionally, the motion court mentioned some of the records indicated Petitioner "lied and manipulated to get into the hospital" and reflected Petitioner "had a history of exaggerating symptoms, lying, manipulating, and faking mental illness."

The appellate court held:

> Here, contrary to Movant's claim, the evidence at the evidentiary hearing established that: (1) Counsel did, in fact, investigate Movant's mental state prior to trial; (2) after investigating Movant's mental state and discussing the offense with Movant, Counsel believed Movant had the ability to consult rationally with Counsel and to understand the proceedings; and (3) Counsel made a strategic decision not to assert a defense of not guilty by reason of mental disease or defect given Movant's explanation of the events, i.e., that he was innocent because he and the victim had engaged in consensual sex.

ECF No. 32-17, pgs. 7-8. It also held "the evidence at the hearing failed to establish that Movant was incapable of knowing and appreciating the nature, quality, or wrongfulness

10

of his conduct at the time he committed the offenses" and affirmed the denial of the argument.

Because the state court made a determination on the merits of Petitioner's claim, the state court's decision is entitled to deference. 28 U.S.C. § 2254(d). Petitioner must show the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. The Court first determines whether there is clearly established law for the argument asserted, because this is a dispositive issue. *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003).

Petitioner does not cite to any United States Supreme Court cases in support of his argument his counsel was ineffective for failing to investigate his mental health problems and low IQ and failing to present a mental disease or defect defense during the guilt phase at trial. "Clearly established law" refers only to United States Supreme Court holdings. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

In fact, the United States Supreme Court has held "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* Further, "counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant." *Id.* The Supreme Court also mentioned "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." *Id.*

11

It is clear from the record the Missouri Court of Appeals found counsel did in fact conduct an investigation into Petitioner's mental health and counsel believed Petitioner could consult rationally and understand the proceedings. The appellate court also found counsel based his strategic decision to pursue a consent defense on the information Petitioner gave him about the events. In particular, counsel based his decision of what defense to pursue on Petitioner's statement to him he was innocent because he and the victim engaged in consensual sex, which diminishes the need for extensive further investigation surrounding Petitioner's alleged mental illness. The state court's ruling on the adequacy of counsel's investigation is consistent with Federal law. Consequently, Petitioner has not shown the state court's decision is contrary to, or an unreasonable application of, clearly established Federal law.

Even if Petitioner's trial counsel did fail to investigate, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *United States v. Morrison*, 449 U.S. 361, 364-65 (1981). In order to prove prejudice, "the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669. The Missouri Court of Appeals found Petitioner, in his appeal, did not establish he was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct at the time he committed the offenses, as required by the mental disease or defect defense in Missouri. Its reasoning was Petitioner's expert's testimony did not meet Missouri statutory standards and because of certain facts

present in the case. Therefore, the mental disease or defect likely would not have succeeded at trial and Petitioner is not prejudiced by this alleged error.

Since Petitioner has not shown the state court's decision is contrary to, or an unreasonable application of, clearly established Federal law and has not shown he was prejudiced by this alleged error, this claim will be denied.

### E. Claim Five – Ineffective Assistance of Counsel: Failure to Present Mitigation Evidence

In his fifth claim, Petitioner argues his trial counsel was ineffective, because counsel failed to advise Petitioner of his right to present mitigating evidence and failed to adduce mitigating evidence such as Petitioner's lack of priors, mental illness, and low IQ during the penalty phase of the trial.

In his post-conviction motion and appeal, Petitioner raised this argument. The motion court and the appellate court denied this argument for reasons similar to those used in denying Claim Four. The motion court mentioned, in its denial of Claim Four, a mental disease or defect defense would have required Petitioner to admit he forcibly raped Victim, and this would have been inconsistent with Petitioner's claim he and the Victim had a consensual sexual relationship. Similarly, the motion court explained, if Counsel were to present evidence of mental disease or defect during the penalty phase, the same inconsistency issues would arise. Additionally, the appellate court emphasized Petitioner's expert, Dr. Peterson, "never clearly testified that Movant was unable to know the difference between right and wrong due to mental disease or mental defect *at the time of the crimes underlying this case*" as required by Missouri statute, and therefore could not prove the necessary components of the mental disease or defect defense, and affirmed the denial of the argument (emphasis original).

13

Because the state court made a determination on the merits of Petitioner's claim, the state court's decision is entitled to deference. 28 U.S.C. § 2254(d). Petitioner must show the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

Petitioner does not cite to any United States Supreme Court cases in support of his argument his counsel was ineffective for failing to adduce mitigation evidence and failing to advise Petitioner of his right to present mitigating evidence during the sentencing phase, such as his lack of priors, mental illness, and low IQ. "Clearly established law" refers only to United States Supreme Court holdings. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A failure to present mitigating evidence or argument is not per se ineffective. *Bell v. Cone*, 535 U.S. 685, 697 (2002).

The motion court found Petitioner's allegation counsel failed to advise him of his right to present mitigating evidence at the penalty phase was meritless and refuted by the record. The motion court found the original trial court questioned Petitioner extensively before beginning the penalty phase to affirm Petitioner knew he had a right to present evidence and call witnesses. The Missouri Court of Appeals affirmed these findings. Review of the trial transcript confirms the accuracy of these holdings:

> THE COURT: Do you understand there is a penalty phase portion of the trial where the jury will decide what punishment to be imposed in the case. It is my understanding that your attorney, after discussing it with you, has decided that he is not going to make an opening statement. You are not going to present evidence in this stage; is that correct?
> [PETITIONER]: Yes.
> THE COURT: Do you understand the evidence could be any number of things, including your testifying, including family members testifying, anyone else on your behalf?
> [PETITIONER]: Yes, I understand.
> THE COURT: Knowing that, you have decided not to present evidence; is that correct?

>           [PETITIONER]: Yes.
>           THE COURT: Do you have any questions about any of that?
>           [PETITIONER]: No.
>           THE COURT: You have had enough time to talk to your attorney about that, and you believe that this is in your best interest; is that correct?
>           [PETITIONER]: Yes.
>           THE COURT: Okay. Again, that's what you want to do?
>           [PETITIONER]: Yes.
>           THE COURT: Okay. Do you have any other questions of me, or your attorney, or anyone else, before we proceed?
>           [PETITIONER]: No.

ECF No. 32-1, pg. 124. Counsel's failure to adduce mitigation evidence during the penalty phase was based on his decision to pursue a consent defense during the guilt phase and wanting to avoid inconsistent arguments. As discussed earlier, counsel decided to pursue a consent defense because of the version of events told to him by Petitioner, i.e. that he and the victim were having consensual sex. The Missouri Court of Appeals held choosing to avoid pursuing inconsistent arguments is not unreasonable. This decision is not contrary to, or an unreasonable application of, clearly established Federal law. Consequently, this claim will be denied.

### F. Claim Six – Ineffective Assistance of Counsel: Waiver of Closing Argument

In his sixth and final claim, Petitioner asserts his trial counsel was ineffective because counsel waived closing argument during the guilt phase without first consulting him.

In his post-conviction motion and appeal, Petitioner raised this argument. The motion court concluded the claim should be denied, because it found trial counsel "clearly reflected on the issue and made the decision to waive closing argument to prevent the state from having 14 minutes of rebuttal argument" and "reassured the trial court that the decision to waive closing argument was trial strategy that both he and [Petitioner] agreed upon." The appellate court held

its review of the record supported the motion court's finding and it "did not err in concluding that trial counsel's strategy to waive closing argument was reasonable."

Because the state court made a determination on the merits of Petitioner's claim, the state court's decision is entitled to deference. 28 U.S.C. § 2254(d). Petitioner must show the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

Petitioner does not cite to any United States Supreme Court cases in support of his argument his counsel was ineffective for waiving closing argument during the guilt phase of the trial without consulting him. "Clearly established law" refers only to United States Supreme Court holdings. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Even if Plaintiff had cited to clearly established law, the Missouri Court of Appeals held trial counsel and Petitioner did consult about waiver of closing argument. A review of the trial transcript supports this finding:

> THE COURT: I just want to make sure, for the record, that you have discussed this with your client. He understands and agrees with the trial decision to waive closing argument.
> [DEFENSE COUNSEL]: That's attorney-client privilege. I don't think you are entitled to ask me that. Subject to that, if the Court forces me to, I'll say, yes, I did.
> THE COURT: My reason for calling you up here is because I want to make sure that's an informed decision.
> [DEFENSE COUNSEL]: I understand that.
> THE COURT: I want to protect you and protect the record.
> [DEFENSE COUNSEL]: It is trial strategy. I have done everything I have discussed with my client the issues we have elected not to make the final argument.

ECF No. 32-1, pg. 123. The Missouri Court of Appeals also held the trial transcript clearly reflected trial counsel's strategy to prevent the State from having fourteen minutes of rebuttal argument, and therefore trial counsel's decision to waive closing argument was not unreasonable. The Petitioner has not shown these decisions by the state court are

contrary to, or an unreasonable application of, clearly established Federal law. This claim will be denied.

## IV. CERTIFICATE OF APPEALABILITY

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Scott Henley's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [4] is **DENIED**, and is denied with prejudice.

**IT IS FURTHER ORDERED** that Scott Henley's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody [1] is **DENIED**, as moot.

So ordered this 19th day of June, 2018.

                                              **E. RICHARD WEBBER**
                                              **SENIOR UNITED STATES DISTRICT JUDGE**